UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YUKTI ABROL,

       Plaintiff,

           - against -

UBER TECHNOLOGIES, INC., ARUN
NAGARAJAN, AJEET GANGA, AND TRAVIS
KALANICK,

       Defendants.

Case No. 1:23-CV-5381-AMD-SJB

**ECF CASE**

## DEFENDANTS UBER TECHNOLOGIES, INC. AND ARUN NAGARAJAN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO COMPEL ARBITRATION</u>

GIBSON, DUNN & CRUTCHER LLP

Theane Evangelis (*pro hac vice*)
333 South Grand Avenue
Los Angeles, California 90071
Tel.: (213) 229-7000
TEvangelis@gibsondunn.com

Michele L. Maryott (*pro hac vice*)
3161 Michelson Drive, Suite 1200
Irvine, California 92612
Tel.: (949) 451-3800
MMaryott@gibsondunn.com

Lee R. Crain
Meika N. Freeman
200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
LCrain@gibsondunn.com
MFreeman@gibsondunn.com

*Attorneys for Defendants Uber Technologies, Inc. and Arun Nagarajan*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL STANDARD...................................................................................................... 6

ARGUMENT ................................................................................................................ 7

   I.     The ADR Agreement Delegates Arbitrability To The Arbitrator, Not Any Court. ......... 8

   II.    The ADR Agreement Is Enforceable. .................................................................. 10

     A.    The ADR Agreement Is Not Procedurally Unconscionable........................................ 10

     B.    Plaintiff Did Not Timely Opt-Out of the ADR Agreement........................................ 12

   III.   All of Plaintiff's Claims Are Arbitrable....................................................... 14

CONCLUSION................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Family Life Assurance Co. of N.Y. v. Baker*,
778 Fed. Appx. 24 (2d Cir. 2019) ...................................................................11

*Arkin v. DoorDash, Inc.*,
2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) .................................................9

*Basset v. Elec. Arts, Inc.*,
93 F. Supp. 3d 95 (E.D.N.Y. 2015) ..............................................................13

*Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.*,
189 F.3d 289 (2d Cir. 1999) ..........................................................................7

*Ciago v. Ameriquest Mortg. Co.*,
295 F. Supp. 2d 324 (S.D.N.Y. 2003) ..........................................................11

*Cimillo v. Experian Info. Sols., Inc.*,
2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023) ................................................9

*De Jesus v. Gregorys Coffee Mgmt., LLC*,
2022 WL 4229331 (E.D.N.Y. June 9, 2022), *recommendation adopted* 2022
WL 3097883 (E.D.N.Y. Aug. 4, 2022) ..........................................................10

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996) .....................................................................................10

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ......................................................................................15

*Fantastic Indus., Inc. v. Kryman*,
2021 WL 2809979 (E.D.N.Y. July 6, 2021) ...................................................14

*Favors v. Triangle Servs., Inc.*,
207 F. Supp. 3d 197 (E.D.N.Y. 2016) ..........................................................7

*Fleming v. Crew*,
2016 WL 6208570 (S.D.N.Y. Oct. 21, 2016) ................................................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ....................................................................................8

*Kai Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) .....................................................10, 13, 14

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015) ..........................................................................17

# TABLE OF AUTHORITIES
## *(continued)*

Page(s)

*Klos v. Lotnicze,*
   133 F.3d 164 (2d Cir. 1997)...................................................................12

*Krafczek v. Cablevision Sys. Corp.,*
   2018 WL 8918077 (E.D.N.Y. Apr. 25, 2018) ........................................13

*Leadertex v. Morganton Dyeing & Finishing Corp.,*
   67 F.3d 20 (2d Cir. 1995)......................................................................14

*McCoy v. Dave & Buster's, Inc.,*
   2018 WL 550637 (E.D.N.Y. Jan. 24, 2018) ..........................................11

*Meyer v. Uber Techs., Inc.,*
   868 F.3d 66 (2d Cir. 2017).....................................................................16

*Mildworm v. Ashcroft,*
   200 F. Supp. 2d 171 (E.D.N.Y. 2002) ...................................................16

*Mumin v. Uber Techs., Inc.,*
   239 F. Supp. 3d 507 (E.D.N.Y. 2017) ........................................10, 11, 12

*Nayal v. HIP Network Servs. IPA, Inc.,*
   620 F. Supp. 2d 566 (S.D.N.Y. 2009).............................................10, 11

*Ragone v. Atlantic Video at Manhattan Ctr.,*
   595 F.3d 115 (2d Cir. 2010)...........................................................10, 12

*Rent a Center, West, Inc. v. Jackson,*
   561 U.S. 63 (2010)................................................................................10

*Rodriguez v. Four Seasons Hotels, Ltd.,*
   2009 WL 2001328 (S.D.N.Y. July 10, 2009) ........................................11

*Schwartz v. Sterling Ent. Enters., LLC,*
   2021 WL 4321106 (S.D.N.Y. Sept. 23, 2021)......................................7, 9

*Thomson-CSF, S.A. v. Am. Arb. Ass'n,*
   64 F.3d 773 (2d Cir. 1995).....................................................................16

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
   363 U.S. 574 (1960)..........................................................................15, 17

*Valle v. ATM Nat., LLC,*
   2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ..........................................10

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,*
   489 U.S. 468 (1989).................................................................................7

*Walters v. Starbucks Corp.,*
   623 F. Supp. 3d 333 (S.D.N.Y. 2022)....................................................17

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

**Statutes**

9 U.S.C. § 2 ............................................................................................................... 7

9 U.S.C. § 3 ............................................................................................................. 17

29 U.S.C. § 206 ...................................................................................................... 15

42 U.S.C. § 2000e, *et seq.* ...................................................................................... 15

N.Y. Labor Law § 190, *et seq.* ............................................................................... 15

Pub. L. No. 117-90, 136 Stat. 26, 28 (2022) ........................................................ 17

Defendants Uber Technologies, Inc. and Arun Nagarajan (together, the "Moving Defendants") respectfully move this Court to compel arbitration and stay this action pursuant to Sections 3 and 4 of the Federal Arbitration Act.

## PRELIMINARY STATEMENT

Plaintiff Yukti Abrol, a former Uber software engineer, alleges that she was subjected to unlawful pay practices, as well as discriminatory and retaliatory conduct during her employment with the company. Defendants vigorously dispute Plaintiff's allegations. But as a threshold matter, that dispute cannot be heard in court. Instead, Plaintiff agreed to arbitrate all of her claims. For that reason, the Moving Defendants now move to compel this action to arbitration.

On April 25, 2017, Uber sent Plaintiff an Employment Agreement that included as an attachment an Alternative Dispute Resolution Agreement (the "ADR Agreement"). In that ADR Agreement—which Plaintiff's counsel has conceded is at least "arguably very clear," Tr. of Pre-Motion Conference, dated August 17, 2023, 7:12-13—Plaintiff agreed to arbitrate all disputes with *any* entity or individual arising out of or relating to her employment at Uber. The ADR Agreement covered claims for discrimination, retaliation, and the federal or state Equal Pay Act. And it explicitly stated that arbitration was not a condition of Plaintiff's employment and that Plaintiff's decision to agree to arbitration was entirely voluntarily. The ADR Agreement also provided Plaintiff a straightforward opportunity to opt out. All she had to do was send Uber a simple opt-out email within 30 days from receiving the agreement. Plaintiff signed her Employment Agreement, including the ADR Agreement, on April 27, 2017. She did not send Uber any opt out email within the 30-day deadline. Plaintiff commenced this action in court years later anyway.

After Plaintiff filed this lawsuit, the Moving Defendants asked her to withdraw it to honor the mutually agreed upon ADR Agreement. Plaintiff refused. Instead, she argued she had opted

1

out of arbitration in 2019—over 20 months after she signed the agreement.  She later argued the agreement was procedurally unconscionable and contravened public policy.  Plaintiff is wrong on all counts.  Her long-delayed attempted opt out does not comply with the plain text of the ADR Agreement and was therefore ineffective; the ADR Agreement was procedurally fair; and enforcing the ADR Agreement as it applies to Plaintiff's claims is entirely consistent with federal law and New York State policy.  The agreement is enforceable, and it applies here.

This Court should grant this motion to compel for three reasons.  *First*, the ADR Agreement contains an express delegation clause where the parties clearly and unmistakably agreed that the issue of arbitrability would initially be decided by the arbitrator, not this Court.  That delegation clause alone requires this action to be compelled to arbitration, where Plaintiff is free to raise her objections to arbitration and even her allegations of procedural unconscionability.  *Second*, if the Court chooses to address arbitrability (and it should not), the ADR Agreement is enforceable.  Contrary to Plaintiff's allegations, the ADR Agreement is not procedurally unconscionable merely because Uber sent it to her electronically as an attachment to her Employment Agreement.  Nor does Plaintiff's belated attempt to opt-out on January 2, 2019—over 19 months after the opt-out deadline expired—have any effect.  *Third*, all of Plaintiff's claims against Defendants fall within the scope of the ADR Agreement under the agreement's clear and unambiguous language.

This Court should compel arbitration of Plaintiff's claims and stay this action during the pendency of that arbitration.

## STATEMENT OF FACTS

Plaintiff Yukti Abrol is a former software engineer for Uber.  Compl. ¶ 8.  Uber is a technology company that operates a multi-sided platform, including smartphone applications with proprietary marketplace, routing, pricing, and payments technologies.  Plaintiff joined the

company in June 2017 and ultimately left her employment in September 2020.  *Id.* at ¶¶ 8, 250.
During her time at Uber, Defendants Nagarajan and Ganga managed her.  *Id.* at ¶¶ 5, 6.

On April 25, 2017, Plaintiff received an employment offer from Uber, which contained the
terms and conditions of her prospective employment (the "Employment Agreement").  Declaration
of Todd Keating, dated September 21, 2023 ("Keating Decl") ¶¶ 6, 9.  The Employment
Agreement included three attachments, including the ADR Agreement, *see* Keating Decl. Ex. A,
and explained that "Attachment B to this Agreement is an Alternative Dispute Resolution
Agreement . . . and is incorporated by reference into and is part of this offer of employment.
Therefore, before accepting this offer of employment, please read the Alternative Dispute
Resolution Agreement carefully."  *Id*. at ¶ 8(f).

The ADR Agreement stated that it is governed by the Federal Arbitration Act and applies
to: "any past, present or future dispute arising out of or related to your employment with Uber
Technologies, Inc. or one of its affiliates, successor subsidiaries, assigns or parent companies
("Company") or termination of employment and survives after the employment relationship
terminates."  Keating Decl. Ex. B ¶ 1.  The ADR Agreement also provides that it:

> [A]pplies, without limitation, to disputes with any entity or
> individual ***arising out of or related to . . . the employment
> relationship or the termination of that relationship*** (including
> without limitation post-employment defamation or ***retaliation***),
> contracts, trade secrets, unfair competition, compensation, breaks
> and rest periods, classification, minimum wage, seating, expense
> reimbursement, overtime, discrimination, harassment, retaliation
> and claims arising under the . . . Equal Pay Act . . . and state statutes
> or regulations, if any, addressing the same or similar subject matters,
> and all other federal and state legal, statutory and common law
> claims arising out of or relating to your employment or the
> termination of employment.

*See id.* (emphases added).  It also contains a delegation clause stating the ADR Agreement applies
to:

> the resolution of disputes that otherwise would be resolved in a court
> of law or before a forum other than arbitration. ***This Agreement
> requires all such disputes to be resolved only by an arbitrator
> through final and binding arbitration*** and not by way of court or
> jury trial. Except as this Agreement otherwise provides, ***such
> disputes include without limitation disputes arising out of or
> relating to interpretation or application of this Agreement,
> including the enforceability, revocability or validity of the
> Agreement*** or any portion of the Agreement.

*See id.* (emphases added). The ADR Agreement establishes an opt out mechanism as well. That

opt out clause stated that arbitration was "not a mandatory condition of your employment" and

Plaintiff's "decision to be bound or not to be bound by this Agreement is entirely voluntary." *Id.*

at ¶ 4. To opt out, all Plaintiff had to do was "send an email to employeeoptout@uber.com stating

your first and last name and your intention to opt out. In order to be effective, [the] opt-out notice

must be provided within 30 days of your receipt of this Agreement." *Id.* The opt out clause

concluded:

> If you opt out as provided in this paragraph, you will not be subject
> to any adverse employment action as a consequence of that decision
> and may pursue available legal remedies without regard to this
> Agreement. ***If you do not opt out within 30 days of your receipt of
> this Agreement, continuing your employment constitutes mutual
> acceptance of the terms of this Agreement by you and the
> Company***. You have the right to consult with counsel of your choice
> concerning this Agreement.

*Id.* (emphases added).

Plaintiff accepted Uber's employment offer the day she received it, Compl. ¶ 33, and two

days later on April 27, 2017 she signed the ADR Agreement. Keating Decl. Ex. A. Plaintiff did

not email Uber within 30 days to opt out. Keating Decl. ¶ 11. She commenced work at Uber on

June 5, 2017. Compl. ¶ 34.

On January 2, 2019, Plaintiff sent an email to employeeoptout@uber.com. *See* Keating

Decl. Ex. C. She stated "Hello, I, Yukti Abrol, wish to opt out of arbitration." *Id.* This putative

4

request to opt out came over 20 months after Plaintiff had signed the ADR Agreement, and over
19 months after the opt out period had expired.  That same day, she received an email from
"employeeoptout+noreply@uber.com" responding: "Thank you.  We have received your desire to
opt out of the Dispute Resolution Agreement."  Keating Decl. Ex. D.

**Frances Slusarz**

| | |
|---|---|
| **From:** | Employee opt out <employeeoptout+noreply@uber.com> |
| **Sent:** | Wednesday, January 2, 2019 11:55 AM |
| **To:** | Yukti Abrol |
| **Subject:** | Re: Opt out |

Thank you. We have received your desire to opt out of the Dispute Resolution Agreement.
If you have any questions in regards to the Dispute Resolution Agreement, then please forward your questions to
PeopleOps@uber.com with subject heading "OPT OUT - Dispute Resolution Agreement".
Please DO NOT REPLY to this message. Replies to this message are routed to an unmonitored mailbox. For all questions
please reach out to PeopleOps@uber.com.
Thank you.

*Id.*  Plaintiff continued her employment with Uber, leaving the Company on September 15, 2020.
*See* Compl. ¶ 250.

Almost three years later, Plaintiff commenced this action in New York State Supreme
Court, Queens County.  *See* ECF No. 1-3.  The Complaint brought five causes of action against
four defendants, including Uber, Nagarajan, Ganga, and Travis Kalanick.  *Id*.  The Complaint
claims between June 2017 and May 2020, Plaintiff experienced gender, sexual orientation,
disability, and ethnicity discrimination in violation of the New York State Human Rights Law
("NYSHRL") and New York City Human Rights Laws ("NYCHRL"), as well as retaliation in
violation of the NYSHRL and NYCHRL for reporting that discrimination.  *Id*.  She also asserted
violations for the federal and New York State Equal Pay Acts, as well as claims against the

individual defendants for aiding and abetting discrimination in violation of the NYSHRL and NYCHRL. *Id.*[1]

Uber and Nagarajan accepted service on July 12, 2023, ECF No. 1 ¶ 3, and removed this action to this Court two days later on the basis of diversity and federal question jurisdiction. *Id.* at ¶¶ 5-11. Before removal, Uber asked Plaintiff to withdraw the action and proceed to arbitration as the ADR Agreement required. Declaration of Lee R. Crain, dated September 28, 2023 ("Crain Decl."), Ex. A. In response, Plaintiff's counsel stated that Plaintiff had opted out of arbitration, citing the January 2, 2019 email and Uber's response. *Id.* Uber's counsel responded that the ADR Agreement "provided the exclusive means of opting out, including a 30-day window in which to do so, and Ms. Abrol's email in 2019 (years after she entered into the ADR agreement) did not comply with the terms. The email you have attached merely confirms receipt of her email; it does not render the email in compliance with the agreement." *Id.*

The parties therefore reached an impasse on whether this action should be compelled to arbitration but agreed that, pending resolution of a motion to compel—which Defendants agreed to file promptly—Defendants' obligation to answer or move to dismiss should be stayed. *Id.* This motion ensued.

## **LEGAL STANDARD**

The Federal Arbitration Act provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid,

---

[1] Most of Plaintiff's claims are subject to a three-year limitations period and are thus plainly time barred, as Plaintiff identifies no allegedly actionable misconduct occurring after June 8, 2020 (*i.e.*, three years before she filed her Complaint). During the recent pre-motion conference, however, Plaintiff invoked the "continuing violation theory." H'rg Tr. at 11:2-3. But the Complaint does not identify a single factual allegation to support that any "continuing violation[s]" occurred, particularly where Plaintiff herself concedes she was only working for two weeks between June 8, 2020, and when she left the Company three months later on September 15, 2020. *See, e.g.*, Compl. ¶¶ 245–47, 250.

irrevocable, and enforceable." 9 U.S.C. § 2. "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, according to their terms" and, through the FAA, "Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd*., 189 F.3d 289, 294 (2d Cir. 1999) (internal citations and quotation marks omitted); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.").

New York law governs the formation of the parties' arbitration agreement here. *Schwartz v. Sterling Ent. Enters., LLC*, 2021 WL 4321106, at *6 (S.D.N.Y. Sept. 23, 2021). "Under New York law, the party seeking arbitration need only prove the existence of a valid arbitration agreement by a preponderance of the evidence." *Id.* at *3 (internal citation omitted). "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties." *Id.* And it "imposes a heavy burden on the party seeking to disprove these presumptions." *Id.*

In determining whether to compel arbitration, courts "may . . . consider materials outside of the Complaint." *Favors v. Triangle Servs., Inc.*, 207 F. Supp. 3d 197, 200 (E.D.N.Y. 2016) (internal quotation marks omitted). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Id.*

## **ARGUMENT**

This Court should compel this action to arbitration. Plaintiff concedes that she signed the ADR Agreement upon commencing her employment with Uber, and its plain terms apply to all of her claims. Under New York law, then, the agreement is "presume[d] . . . valid," and Plaintiff bears a "heavy burden" to show otherwise. *Schwartz*, 2021 WL 4321106, at *3 (internal citation

7

omitted).  She cannot do so.  But even if there were any doubts as to the ADR Agreement's applicability or enforceability (and there are not), arbitration is required here because the ADR Agreement clearly delegates to the arbitrator—not any court—the authority to resolve any questions "arising out of or relating to interpretation" of the agreement, including its "enforceability, revocability, or validity."  Keating Decl. Ex. B ¶ 1.  Because of that delegation, because the ADR Agreement is enforceable and Plaintiff did not timely opt out, and because the ADR Agreement unambiguously applies to every one of Plaintiff's claims, this motion should be granted in full.

## I.     The ADR Agreement Delegates Arbitrability To The Arbitrator, Not Any Court.

Regardless of whether the ADR Agreement covers Plaintiff's claims and irrespective of her argument that she (belatedly) opted out, this Court should compel this action to arbitration because the ADR Agreement expressly delegates arbitrability to the arbitrator.  It is well settled that delegation agreements are enforceable.  As the U.S. Supreme Court has held, when "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  Courts must respect and enforce the parties' contractual choice.  *Id.* at 531.

Here, the ADR Agreement contains an explicit delegation clause.  The clause provides that "*all*" "disputes that otherwise would be resolved in a court of law or before a forum other than arbitration" must be "resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."   Keating Decl. Ex. B ¶ 1 (emphasis added).  It then clarifies unambiguously that "such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." *Id.*

This language is textbook arbitrability delegation, and courts in the Second Circuit have repeatedly honored similar provisions.  In *Arkin v. DoorDash, Inc.*, 2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020), for instance, Judge Garaufis granted the defendant's motion to compel arbitration based on the arbitration agreement's express delegation clause, which stated: "The arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." *Id.* at *5.  The court declined to reach the plaintiff's argument in that case that the arbitration agreement was unconscionable, noting that the contractual text "clearly and unmistakably agreed to delegate issues of enforceability of the arbitration agreement to the arbitrator." *Id.*

Similarly, in *Schwartz v. Sterling Entertainment Enterprises, LLC*, the court granted the defendant's motion to compel arbitration finding that the parties had clearly and unmistakably delegated questions of arbitrability to the arbitrator.  2021 WL 4321106, at *6.  The parties' delegation clause stated that "[t]he Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this [] Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void." *Id. See also Cimillo v. Experian Info. Sols., Inc.*, 2023 WL 2473403, at *8 (S.D.N.Y. Mar. 13, 2023).

So, too, here.  The ADR Agreement has clearly and unmistakably delegated the issue of arbitrability to the arbitrator.  Longstanding Supreme Court and Second Circuit case law confirms that delegation must be honored.  Any objection Plaintiff has to the ADR Agreement's scope or enforceability must therefore be resolved through the arbitration process itself.

## II.     The ADR Agreement Is Enforceable.

If the Court does decide to address arbitrability, it should nonetheless compel arbitration as the ADR Agreement is enforceable.  Contrary to Plaintiff's contentions, the ADR Agreement is not procedurally unconscionable.  And Plaintiff did not opt out.  This Court should grant the motion to compel.

### A.     The ADR Agreement Is Not Procedurally Unconscionable.

Courts decline to enforce arbitration agreements when an agreement is unconscionable. *Rent a Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Under New York law, an arbitration agreement is only unconscionable (and thus unenforceable) when it is "*both* procedurally and substantively unconscionable." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55 (E.D.N.Y. 2017) (emphasis added); *Nayal v. HIP Network Servs. IPA, Inc*., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009); *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).  Here, Plaintiff bears the burden to prove both prongs. *Ragone*, 595 F.3d at 121.

An agreement is procedurally unconscionable when the process of contract formation deprives a party of "meaningful choice" in assenting to the agreement. *De Jesus v. Gregorys Coffee Mgmt., LLC*, 2022 WL 4229331, at *7 (E.D.N.Y. June 9, 2022), *recommendation adopted* 2022 WL 3097883 (E.D.N.Y. Aug. 4, 2022); *Nayal*, 620 F. Supp. 2d at 571.  Courts in this circuit have repeatedly held that "[a]n agreement is not procedurally unconscionable if there is a meaningful opportunity to opt out." *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525-26 (E.D.N.Y. 2017) (internal citations omitted); *see also Kai Peng*, 237 F. Supp. 3d at 55; *Valle v. ATM Nat., LLC,* 2015 WL 413449, at *6 (S.D.N.Y. Jan. 30, 2015).  Even requiring an employee to sign an arbitration agreement as a condition of employment does not render the agreement procedurally unconscionable. *See, e.g., De Jesus*, 2022 WL 4229331, at *9; *McCoy v. Dave &*

*Buster's, Inc.*, 2018 WL 550637, at *9 (E.D.N.Y. Jan. 24, 2018) (quoting *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003)).   An agreement is substantively unconscionable when "one or more key terms are unreasonably favorable to one party." *Am. Family Life Assurance Co. of N.Y. v. Baker*, 778 Fed. Appx. 24, 27 (2d Cir. 2019).

Here, Plaintiff's unconscionability argument fails for three reasons.  *First*, Plaintiff has not challenged the ADR Agreement as substantively unconscionable.  *See* ECF No. 17.  Under clear New York law, even a procedurally unconscionable arbitration agreement is enforceable if it is substantively conscionable.  *Nayal*, 620 F.Supp.2d at 573.  Plaintiff has the burden to prove both unconscionability prongs, and her failure to challenge one of them is dispositive.  *Id.  Second*, the ADR agreement had a clear and straightforward opt-out provision, *see infra* Arg. Pt. II(B)—the existence of which defeats Plaintiff's argument that the agreement was procedurally unconscionable.  *See Mumin*, 239 F. Supp. 3d at 525-26 (holding arbitration agreement was not unconscionable where plaintiffs had 30 days to opt out and thus "cannot make the necessary showing of procedural unconscionability").  And *third*, the ADR Agreement itself confirms that arbitration is voluntary, Keating Decl. Ex. B at ¶ 4, and manifestly *not* a condition of employment. *See Fleming v. Crew*, 2016 WL 6208570, at *2 (S.D.N.Y. Oct. 21, 2016); *Rodriguez v. Four Seasons Hotels, Ltd.*, 2009 WL 2001328, at *4 (S.D.N.Y. July 10, 2009).

Bypassing these facts, Plaintiff argues that she was "coerced into executing the ADR Agreement," ECF No. 17 at 1, merely because the ADR Agreement was "presented to Plaintiff for electronic signature" within a "lengthy file of employment-related documents" and thus she "had no choice but to sign the ADR Agreement because she could not navigate to the remaining pages in the file without first signing the ADR Agreement."  *Id.*  Not so.  The ADR Agreement was presented to Plaintiff in a clear and transparent way.  Specifically, the Employment Agreement

11

identified clearly each of the three documents attached to it.  Keating Decl. Ex. A.  It explained that "Attachment B to this Agreement is an Alternative Dispute Resolution Agreement . . . and is incorporated by reference into and is part of this offer of employment.  Therefore, before accepting this offer of employment, please read the Alternative Dispute Resolution Agreement carefully." Keating Decl. Ex. A at ¶ 8(f).  Plaintiff was also provided with time to review the ADR Agreement and ask any questions about the documents.  *See* Keating Decl. ¶¶ 7, 9.  Indeed, Plaintiff appears to have taken the time she needed to review:  she did not sign the agreement until two days after she received it.  *Id.*  Moreover, Plaintiff did not raise any concerns about the ADR Agreement during her onboarding process.  *Id.* at ¶ 9.

The contract formation process was fair and reasonable.  Plaintiff had a "meaningful choice" to decide whether to agree to arbitration and whether to opt out.  The ADR Agreement is therefore not procedurally unconscionable.  *See, e.g.*, *Mumin*, 239 F. Supp. 3d at 525; *Ragone*, 595 F. 3d at 122.[2]

### B.    Plaintiff Did Not Timely Opt-Out of the ADR Agreement.

The ADR Agreement is also enforceable because Plaintiff did not timely opt out.  Plaintiff had thirty days to opt out of the ADR Agreement following her receipt of the agreement on April 25, 2017.  Keating Decl. Ex. A ¶ 4.  That deadline was May 25, 2017.  The opt out procedure was simple and straightforward; all it required was that Plaintiff email Uber at an enumerated email address, provide her first and last name, and state her intention to opt out.  *Id.*  The opt out also

---

[2]    *Klos v. Lotnicze*, 133 F.3d 164 (2d Cir. 1997) (cited at ECF No. 17 at 2), is inapposite and unavailing.  In *Klos*, the Second Circuit held that round-trip airline tickets were *not* "contracts of adhesion" entered into through coercion because the purchasers were on notice that the airline required purchase of round-trip airfare before purchasing their tickets and the tickets were not sold by fraud or deceit.  *Id.* at 169.  Plaintiff has not argued the ADR Agreement was a contract of adhesion (nor could she), and, like the plaintiffs in *Klos*, Plaintiff was clearly on notice of the ADR Agreement and her meaningful means of opting out.

made crystal clear that failing to timely opt out and continuing employment "constitutes mutual acceptance" of the ADR Agreement, and affirmed unambiguously that opting out would not result in any "adverse employment action" and that Plaintiff had full rights to "consult with counsel of your choice concerning this Agreement." *Id.* May 25, 2017 came and went, and Plaintiff did not send any opt out email. She then commenced work at Uber (staying for nearly three years). Under the plain terms of the ADR Agreement, she agreed to the ADR Agreement in full.

To the extent Plaintiff attempts to rely on her putative January 2, 2019 email opt out, this argument is unavailing. That tardy opt out is ineffective under the ADR Agreement's plain language, and that language is enforceable. In fact, courts in this District have consistently compelled arbitration where, as here, the plaintiffs agreed to arbitrate and failed to properly opt out in accordance with the terms of the arbitration agreement. *See, e.g.*, *Krafczek v. Cablevision Sys. Corp.*, 2018 WL 8918077, at *5 (E.D.N.Y. Apr. 25, 2018) (granting motion to compel arbitration where the plaintiff did not opt out of arbitration agreement within thirty days as required under arbitration agreement); *Basset v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (granting motion to compel arbitration where plaintiff accepted arbitration agreement and "did not opt-out of the arbitration agreement using the process described in the arbitration clause").

In *Kai Peng v. Uber Technologies, Incorporated*, 237 F. Supp. 3d 36 (E.D.N.Y. 2017), for instance, another court in this District granted Uber's motion to compel arbitration finding that the plaintiffs did not timely opt out of their arbitration provision. There, the plaintiffs had signed in December 2015 an agreement containing an arbitration provision that permitted them to opt out within thirty days of the agreement's execution. *Id.* at 43. The plaintiffs did not opt out within that thirty-day window, and instead sent an untimely "opt-out" letter on February 1, 2016—a few weeks too late. *Id.* at 44 n.7. The court found that weeks'-long delay insufficient and compelled

arbitration, explaining that "Plaintiffs failed to timely opt out of the Arbitration Provision." *Id*. at 44. Plaintiff's position here is no different except for the fact that her opt out was untimely by a matter of over 19 *months*, not just a few weeks as in *Kai Peng*.

Plaintiff's argument that Uber "confirm[ed]" her belated opt out, Crain Decl. Ex. A, is unavailing. Consistent with the strong federal policy in favor of arbitration, a waiver of the right to arbitrate "is not to be lightly inferred." *Leadertex v. Morganton Dyeing & Finishing Corp*., 67 F.3d 20, 25 (2d Cir. 1995) (internal quotation marks omitted). Waiver may be found when a party "act[s] inconsistently with the right to arbitrate," and the party opposing arbitration demonstrates prejudice. *See Fantastic Indus., Inc. v. Kryman*, 2021 WL 2809979, at *5 (E.D.N.Y. July 6, 2021). Here, Plaintiff cannot bear her burden to show Uber's January 2, 2019 email from a "no reply" email address evidenced a waiver of Uber's right to arbitrate, nor that she has been prejudiced in any way. Uber's email states only that it "received" Plaintiff's "desire to opt out of the Dispute Resolution Agreement," and "[p]lease DO NOT REPLY to this message," as any such email would be "routed to an unmonitored mailbox." Keating Decl. Ex. D. It went on to explain that she was free to direct any questions about the "Dispute Resolution Agreement" to PeopleOps@uber.com. *Id.* The email cannot constitute a waiver of Uber's right to arbitrate. *Id.* And Uber has never otherwise agreed "that Ms. Abrol had opted out consistent with the terms of her ADR Agreement, nor has Uber agreed to waive those terms." Keating Decl. ¶ 13.

In sum, the ADR Agreement remains enforceable. Plaintiff did not timely opt out. This Court should compel this action to arbitration.

### III.   All of Plaintiff's Claims Are Arbitrable.

Under the ADR Agreement's plain terms, Plaintiff's claims are all subject to arbitration. "[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the

scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Given the FAA's strong presumption in favor of arbitration, courts generally deem a plaintiff's claims covered by an arbitration agreement "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Any "[d]oubts should be resolved in favor of coverage." *Id.*

Here, there is no ambiguity in the ADR Agreement as applied to Plaintiff's claims. The Complaint's first cause of action is for discrimination in violation of the NYSHRL and NYCHRL. Compl. ¶¶ 251-56. The ADR Agreement specifically applies to "discrimination" claims, the "Civil Rights Act of 1964" (which prohibits discrimination in employment, 42 U.S.C. § 2000e, *et seq.*), and "state statutes or regulations, if any, addressing the same or similar subject matters." Keating Decl. Ex. B ¶ 1. Plaintiff's second and third causes of action seek redress for alleged violations of the New York and federal Equal Pay Acts, N.Y. Labor Law § 190, *et seq.*; 29 U.S.C. § 206(d). Compl. ¶¶ 257-266. The ADR Agreement applies to those claims, too, specifically identifying as arbitrable "claims arising under . . . the . . . Equal Pay Act . . . and state statutes or regulations, if any, addressing the same or similar subject matters." Keating Decl. Ex. B ¶ 1. Plaintiff's fourth and fifth claims for retaliation and aiding and abetting under the City and State Human Rights Law, Compl. ¶¶ 267-283, also squarely fall into the ADR Agreement, which on its face applies to claims for "retaliation" and any state "statutory and common law claims arising out of or relating to your employment" under state or federal law. Keating Decl. Ex. B ¶ 1. Were there any doubt that each of these claims is specifically covered in the ADR Agreement, the agreement resolves those doubts clearly: The ADR Agreement "applies, without limitation, to disputes with any entity or individual arising out of or related to . . . the employment relationship or the termination of that

relationship." *Id.*  At its core, this case is about Plaintiff's employment.  *See, e.g.*, Compl. ¶¶ 2, 4-7, 9-10.  And given that core, the case must be arbitrated.[3]  *See Mildworm v. Ashcroft*, 200 F. Supp. 2d 171, 178 (E.D.N.Y. 2002) (finding a broad agreement to arbitrate "all legal and or equitable claims arising out of [plaintiff's] employment or termination of employment" justified a presumption of arbitrability, and encompassed plaintiff's federal and state employment discrimination claims).

The analysis is no different for the individual defendants.  Plaintiff argues that she is "not party to any agreement with the [individual defendants] to resolve their disputes by arbitration," ECF No. 17 at 2, but the ADR Agreement specifically encompasses any "dispute[] with *any entity or individual*."  Keating Decl. Ex. B ¶ 1 (emphasis added).  Defendant Nagarajan (as well as Ganga and Kalanick) is plainly an individual, and the Complaint tees up with him a "dispute[] . . . related to" Plaintiff's "employment relationship" with Uber "or the termination of that relationship."  *Id.*  Consistent with that plain text, "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 n.11 (2d Cir. 2017) (internal citation omitted) (finding that even though "Kalanick is not a party to the [arbitration agreement] between Uber and Meyer, he is nonetheless protected by [it]").  The ADR Agreement therefore clearly applies to Plaintiff's claims against Uber and all other defendants.[4]

---

[3]    In her pre-motion letter, Plaintiff argued that many of her allegations against the individual defendants "fall far outside the scope of their employment," and thus Uber may not be vicariously liable for their conduct.  ECF No. 17 at 2.  But Uber's vicarious liability has no bearing whatsoever on the scope of the ADR Agreement.  Because Plaintiff's allegations against the individual defendants (all current or former Uber employees) "aris[e] out of or relate to" Plaintiff's employment with Uber, her claims are covered under the plain language of the ADR Agreement.  Keating Decl. Ex. B ¶ 1.

[4]    *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773 (2d Cir. 1995) (cited at ECF No. 17 at 2), actually supports Uber's position.  The Second Circuit in that case recognized that "traditional

Because all of Plaintiff's claims against Defendants are clearly and unmistakably within the scope of the ADR Agreement, Plaintiff should be compelled to arbitrate her claims.[5]

## **CONCLUSION**

For the foregoing reasons, this Court should grant this motion and compel this action to arbitration.   The Court should also stay this action "until such arbitration" is complete.   *See* 9 U.S.C. § 3; *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015).

---

principles of agency law may bind a nonsignatory to an arbitration agreement." *Id.* at 777.  So, too, does *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) (cited at ECF No. 17 at 2).  There, the U.S. Supreme Court stated that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Id*.  But here, each and every claim Plaintiff brought against each of the Defendants is squarely encompassed in the ADR Agreement.

[5]   To the extent Plaintiff argues that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") is somehow applicable, her arguments fail.  As Plaintiff's counsel conceded at the August 17, 2023 pre-motion conference, the EFAA is not retroactive and applies only to claims accrued on or after March 3, 2022—*i.e.*, years after any of the conduct alleged in the Complaint.  *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); *see, e.g.*, *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022).  And although Uber as a matter of company policy does not require employees to arbitrate individual claims of sexual assault or sexual harassment, Plaintiff has not pleaded any specific causes of action for sexual assault or sexual harassment in the Complaint (*see* ECF Nos. 1-3).

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ *Theane Evangelis*

Theane Evangelis (*pro hac vice*)
333 South Grand Avenue
Los Angeles, California 90071
Tel.: (213) 229-7000
TEvangelis@gibsondunn.com

Michele L. Maryott (*pro hac vice*)
3161 Michelson Drive, Suite 1200
Irvine, California 92612
Tel.: (949) 451-3800
MMaryott@gibsondunn.com

Lee R. Crain
Meika N. Freeman
200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
LCrain@gibsondunn.com
MFreeman@gibsondunn.com

*Attorneys for Defendants Uber Technologies,
Inc. and Arun Nagarajan*