UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YUKTI ABROL,

                           **Plaintiff,**

    -against-

UBER TECHNOLOGIES, INC., ARUN
NAGARAJAN, AJEET GANGA, AND
TRAVIS KALANICK,

                        **Defendants.**

Case No.: 1:23-cv-05381-AMD-SJB

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION

**GODDARD LAW PLLC**
**39 Broadway, Suite 1540**
**New York, New York 10006**
**Office: (646) 964-1178**

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .......................................................................................ii-iv

I.      RELEVANT FACTS ..............................................................................................1

II.     ARGUMENT ..........................................................................................................3

     A.  The Arbitration Agreement is Effectively Mandatory .......................................3

     B.  The ADR Agreement is Unconscionable ............................................................4

          i.      The purported Agreement to Arbitrate Sexual Harassment and
               Assault Claims is Substantively Unconscionable ...........................6

          ii.     The ADR Agreement is Procedurally Unconscionable .................10

     C.  The Court Should Interpret the Contract .........................................................10

     D.  It Is Within the Court's Exclusive Province to Determine Whether an
        Agreement To Arbitrate Was Formed ..............................................................12

     E.  The Arbitration Agreement is Not Mutual Between Plaintiff and the
        Defendants ........................................................................................................14

III.    CONCLUSION ....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                     <u>Page</u>

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
        475 U.S. 643 (1986)...................................................................................13

*Bensadoun v. Jobe-Riat,*
        316 F.3d 171 (2d Cir. 2003)....................................................................10

*Blessing v. Sirius XM Radio, Inc.,*
        756 F. Supp. 2d 445 (S.D.N.Y. 2010)....................................................10

*Brennan v. Bally Total Fitness,*
        198 F. Supp 377 (S.D.N.Y. 2002) ......................................................7, 10

*Buckeye Check Cashing, Inc. v. Cardegna,*
        546 U.S. 440 (2006)...................................................................................12

*Burlington Ind., Inc. v. Ellerth,*
        524 U.S. 742 (1998)...................................................................................15

*David v. #1 Mktg. Serv., Inc.,*
        979 N.Y.S.2d 375 (2d Dep't 2014)...........................................................5

*First Options of Chi., Inc. v. Kaplan,*
        514 U.S. 938 (1995 ...................................................................................13

*Gateway Coal Co. v. Mine Workers,*
        414 U.S. 368 (1974)...................................................................................13

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
        561 U.S. 287 (2010)...................................................................................13

*In re Vought's Estate,*
        334 N.Y.S.2d 720 (Sur. Ct. N.Y. Cty. 1972),
        aff'd, 45 A.D. 991 (1st Dep't 1974)...........................................................5

*Johnson v. Medisys Health Network,*
        2011 WL 5222917 (E.D.N.Y. June 1, 2011) ............................................9

*Klos v. Lotnicze,*
        133 F.3d 164 (2d Cir. 1997).......................................................................3

*Kowalchuk v. Stroup,*
        873 N.Y.S.2d 43 (1st Dep't 2009) .............................................................5

*Lease Fin. Grp. LLC v. Indries*,
    2015 WL 85443387 (Civ. Ct. N.Y. City Dec. 9, 2015) ...........................................5

*Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*,
    853 F.3d 804 (5th Cir. 2017) ............................................................................12

*Matter of Friedman*,
    407 N.Y.S.2d 999 (2d Dep't 1978) ....................................................................5

*Metro Health Care Servs., Inc. v. Edwards*,
    884 N.Y.S.2d 648 (Sup. Ct. N.Y. Cty. 2009) ....................................................4

*Nat'l Fed'n of the Blind v. The Container Store, Inc.*,
    904 F.3d 70 (1st Cir. 2018) ...............................................................................12

*Newsday, Inc. v. Long Island Typographical Union, No. 915, CWA. AFL-CIO*,
    915 F.2d 840 (2d Cir. 1990) ...............................................................................8

*Phillips v. Manhattan & Bronx Surface Transit Operating Auth.*,
    132 A.D.3d 149 (1st Dep't 2015) .......................................................................8

*Preferred Cap., Inc. v. Warren*,
    2003 WL 22515182 (Sup. Ct. Yates Cty. Oct. 28, 2003). Aff'd,
    778 N.Y.S.2d 803 (4th Dep't 2003) ..................................................................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ..........................................................................................13

*Rent-A-Center West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................................12

*Simar Holding Corp. v. GSC*,
    928 N.Y.S.2d 592 (2d Dep't 2011) ....................................................................7

*State of N.Y. v. Wolowitz*,
    468 N.Y.S.2d 131 (2d Dep't 1983) ...............................................................6, 11

*Thomson-CSF, S.A. v. American Arbitratio Ass'n*,
    64 F.3d 773 (2d Cir. 1995) ...............................................................................14

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960) ..........................................................................................13

## **Statutes**

CPLR § 7503(a) ........................................................................................................11

CPLR § 7515..........................................................................................................................9

Plaintiff Yukti Abrol, by and through her attorneys Goddard Law PLLC, 39 Broadway, Suite 1540, New York, New York 10006, hereby opposes Defendants' Motions to Compel Arbitration. [Dkt # 27, 29]

In support hereof, Plaintiff submits the Declaration of Yukti Abrol ("Abrol Decl.").

I.     RELEVANT FACTS

Plaintiff worked for Defendant Uber Technologies, Inc. ("Uber") from June 2017 to September 15, 2020, during which time she was subjected to discrimination because of her gender, sexual orientation, disability, and ethnicity, in violation of the New York State Human Rights Act and New York City Human Rights Act. She also suffered retaliation for opposing Uber's discriminatory work environment, and was paid less than men performing equivalent work.

Before she started working for Uber, Uber presented to her a lengthy file of employment-related documents for her electronic signature. One of the documents was an Alternative Dispute Resolution Agreement (the "ADR Agreement").

The manner in which Uber presented the ADR Agreement discouraged close reading and analysis. The ADR was the seventh document of 11 in a 59-page pdf file. (Abrol Decl. ¶ 6, Ex. 1) In addition to the ADR Agreement, the file included:

- Plaintiff's Employment Agreement;

- Relocation Expenses Agreement;

- Confidential Information and Invention Assignment Agreement;

- List of Prior Inventions and Original Works of Authorship Disclosure;

- Termination Certification;

- RSU Vesting Summary;

1

- Export Compliance Form;

- Network Data Access Policy; and

- A 22-page summary of Employee Benefits.

*Id.*

Uber gave her no choice about signing the ADR Agreement. Indeed, her employment agreement states that her "acceptance of [Uber's] offer and commencement of employment with [Uber] is contingent upon the execution and delivery to an officer of [Uber], of the [ADR Agreement]. (*Id.* Ex. 1, p. 6.) Simply, she could not work for Uber if she did not sign the ADR Agreement.

She could not navigate to the other pages she had to sign without first signing the ADR Agreement. (*Id.* ¶ 9.) She could not see the documents after the ADR Agreement without first signing the ADR Agreement. She could not execute some of the documents and leave the ADR Agreement aside for further contemplation and execution at a later time. (*Id.*)

Uber actively discouraged thoughtful reflection on the terms of the 11 new employee documents it sent Plaintiff. Shortly after Uber sent Plaintiff the file for electronic signature, internal Uber recruiter Patrick Burke emailed and telephoned Plaintniff repeatedly, requesting that she sign and return the new employee documents without delay. (*Id.* ¶ 7.) Patrick Burke and others at Uber pressured her to sign the new employee documents as quickly as possible. She received calls and emails from Uber's head of human resources Liane Hornsey and Defendant Arun Nagarajan ("Defendant Nagarajan") pressuring me to sign the documents. (*Id.*) Finally, Uber imposed a deadline of Friday, April 28 for me to sign the documents. (*Id.*)

From July 18 to July 20, 2017, Plaintiff attended an Uber company retreat at Cedar Lakes Estate, New York. (*Id.* ¶ 10.) On the final night of the retreat, July 19, 2017, Uber threw a party where alcohol was served. (*Id.*)

While Plaintiff danced with her colleagues, Defendant Nagarajan approached her and began dancing uncomfortably close to her. (*Id.* ¶ 11.) Defendant Nagarajan smelled like alcohol and was extremely intoxicated. Plaintiff moved away from him because he made her uncomfortable and she had no interest in his advances. (*Id.*)

To Plaintiff's disgust, Defendant Nagarajan approached her again and began dancing so close to her that she could feel his sweat dripping on me. (*Id.* ¶ 12.) Plaintiff left the dance floor, as she feared for her safety. She tried to avoid Defendant Nagarajan to avoid further harassment from him. (*Id.*) At another Uber event, Defendant Nagarajan threw a plastic ball pit ball at her and hit her in the face. (*Id.* ¶ 13.)

The day that Uber went public, Uber threw another party where alcohol was served. (*Id.* ¶ 14.) Plaintiff wore a unicorn costume over her clothes to mark the fact that Uber was a "unicorn" company (a start up valued at $1 billion or more). (*Id.*) Former Uber CEO, Defendant Travis Kalanick ("Defendant Kalanick"), approached her at the party and made a masturbatory hand gesture upon the unicorn horn on her head. (*Id.*)

On September 28, 2023, Defendants Uber and Nagarajan filed their Motion to Compel Arbitratioin [Dkt #27], in which Defendant Kalanick joined [Dkt # 29].

II.    ARGUMENT

A.  The Arbitration Agreement is Effectively Mandatory

It would offend basic notions of civility and fair play to enforce a contract Defendants coerced Plaintiff to sign. *See Klos v. Lotnicze*, 133 F.3d 164, 168-169 (2d Cir. 1997).

The first document in the file of new employee documents is Plaintiff's employment agreement (the "Employment Agreement). The Employment Agreement states that signing the ADR Agreement is a condition precedent to employment with Uber. (Abrol Decl. Ex. 1, p. 4) The Employment Agreement makes no mention of the ability to opt-out of the ADR Agreement, nor would any reasonable person reading the Employment Agreement expect to find an opt-out provision of a document the person is required to sign. Uber intentionally hid the opt-out provision five documents later, on page 23 of the file of new employee documents. (*See id.* Ex. 1, p. 23)

Defendants attempt to create the veneer of fairness by stating that "[a]rbitration is not a mandatory condition of your employment at" Uber, and "[y]ou have the right to consult with counsel of your choice concerning this Agreement," but these are effectively meaningless clauses. (*See id.*) By bundling the various employment-related documents into a single file, Uber prevented its employee from executing the mandatory documents while putting the ADR Agreement aside for meaningful contemplation. By placing the opt-out provision on the 23rd page of single-spaced legal documents, Uber increased the likelihood that its incoming employees would not notice that the ADR Agreement they were required to sign could be rescinded.

B.  The ADR Agreement is Unconscionable

The Court should deny the motion to compel because the purported arbitration agreement's unconscionability precludes its formation with respect to Plaintiff's sexual harassment claim.

When contract formation is at issue, courts generally apply state law principles, All *Metro Health Care Servs., Inc. v. Edwards*, 884 N.Y.S.2d 648, 652 (Sup. Ct. N.Y. Cty. 2009),

4

including relevant state law defenses to contract formation such as "fraud, duress, or unconscionability." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). Contract formation under New York law requires an offer, acceptance, consideration, mutual assent and an intent to be bound by the contract. See Kowalchuk v. Stroup, 873 N.Y.S.2d 43, 46 (1st Dep't 2009).

Because legal consideration is necessary to form a contract, a court must examine the underlying consideration when it appears that the bargain is such that no individual would accept. *See Lease Fin. Grp. LLC v. Indries*, 2015 WL 85443387, at *3 (Civ. Ct. N.Y. City Dec. 9, 2015) (courts look to the adequacy of the consideration to determine whether the bargain provided for is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[ea]ble according to its literal terms."). "Where the disparity in the consideration exchanged by the parties is overwhelming, that factor alone 'may be sufficient to sustain a finding that the contract is unconscionable,' since such disparity 'itself leads inevitably to the felt conclusion that knowing advantage was taken of one party.'" *Matter of Friedman*, 407 N.Y.S.2d 999, 1008 (2d Dep't 1978) (alteration in original). "The courts cannot just pass off a contract as a hard bargain and be indifferent with regard to excessive and unjustified gains that are directly traceable to disparity in bargaining power." *In re Vought's Estate*, 334 N.Y.S.2d 720, 728 (Sur. Ct. N.Y. Cty. 1972), aff'd, 45 A.D. 991(1st Dep't 1974); *David v. #1 Mktg. Serv., Inc*., 979 N.Y.S.2d 375, 379 (2d Dep't 2014) ("Where there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract.").

Under New York law, formation of an agreement is precluded if it was substantively and procedurally unconscionable at the time the parties contemplated contract formation.

Inquiry into procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice," and often entails consideration of "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Gillman*, 73 N.Y.2d at 10–11. The substantive unconscionability inquiry focuses on whether the terms of the contract are "unreasonably favorable to the party against whom unconscionability is urged." *Id.* at 11. "In determining the conscionability of a contract, no set weight is to be given any one factor; each case must be decided on its own facts." *State of N.Y. v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983). Moreover, "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Id.*

As explained below, the purported agreement to arbitrate is both substantively and procedurally unconscionable.

     i.   The Purported Areement to Arbitrate Sexual Harassment and Assault Claims Is Substantively Unconscionable.

Clauses mandating arbitration of sexual harassment claims have not only been rejected by society at large but are in fact illegal under New York State law. The parties' purported agreement that Plaintiff arbitrate claims of sexual harassment is substantively unconscionable because it is effectively mandatory, and the outrageous and immoral terms of this purported agreement are sufficient in and of themselves to find that an agreement to arbitrate sexual

harassment and assault claims was never formed, even without a showing of procedural unconscionability.

"[T]he substantive element [of unconscionability] looks to the content of the contract, per se," *Simar Holding Corp. v. GSC*, 928 N.Y.S.2d 592, 595 (2d Dep't 2011) (internal quotation marks omitted), and "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 12. An unconscionable contract is "one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[ea]ble according to its literal terms." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002).

The ADR Agreement, silencing Plaintiff's claims of sexual harassment and forcing her to adjudicate such harm outside of the courts, is substantively unconscionable. There is no question that requiring victims of sexual harassment to maintain confidentiality over their claims and waive their constitutional right to trial before a jury of their peers is unreasonably favorable to employers and the harassers employed by the employers, both of whom avoid public disclosure of their mistreatment, neglect and abuse of employees, permitting continued harassment by the harassers. *See Brennan*, 198 F. Supp. 2d at 384 (holding a contract was unreasonably favorable to an employer because it "denied [the employee] the right to proceed in court on her pending sexual harassment claim against the company."). Victims of sexual harassment whose claims are forced into arbitration also do not receive an equivalent process as they would in the court system.

In fact, these terms are not just favorable to Defendants, but benefit only Defendants. Although the Arbitration Agreement claims valid consideration due to mutuality—as Uber also agrees to arbitrate any disputes it may have against Plaintiff—mutuality cannot exist here.

The Economic Policy Institute estimates that workers subject to mandatory arbitration win just 38 percent as often as they would in state court, and 59 percent as often as they would in federal court. Even when workers do win, they only get a fraction of the damages, with the median or typical award in mandatory arbitration being only 21 percent of the median award in the federal courts and 43 percent of the median award in the state courts. Economic Policy Institute, The arbitration epidemic, (Dec. 7, 2015), https://www.epi.org/publication/the-arbitration-epidemic/.

Uber is a corporation and will never be the victim of sexual harassment or employment discrimination. There is nothing mutual about an agreement in which Plaintiff is forced to remain silent and lose her right to be heard by the courts regarding a harm that she has suffered but that Uber can never experience and will never be forced to arbitrate.

It is also apparent that mandatory arbitration of sexual harassment is in direct contravention of societal "mores" and is no longer standard business practice. New York has a longstanding and "strong public policy against sexual harassment in the workplace." *See Newsday, Inc. v. Long Island Typographical Union, No. 915, CWA, AFL-CIO*, 915 F.2d 840, 845 (2d Cir. 1990) ("[T]here is an explicit, well-defined, and dominant public policy against sexual harassment in the work place."); *Phillips v. Manhattan & Bronx Surface Transit Operating Auth.*, 132 A.D.3d 149, 155, 15 N.Y.S.3d 331, 336 (1st Dep't 2015) (vacating an arbitration award reinstating an employee accused of sexual harassment because the arbitrator interpreted the collective bargaining agreement "in a manner that conflicts with a well-defined and dominant

8

public policy. The public policy against sexual harassment in the workplace"). This longstanding

policy corresponds with societal interest in giving victims of sexual harassment a voice and

ensuring that victims have access to the courts. *Johnson v. Medisys Health Network*, 2011 WL

5222917, at *29 (E.D.N.Y. June 1, 2011) ("[T]he interest in public access to court records

militates against sealing the entire record, especially where plaintiff has asserted serious claims

of defamation and sexual harassment that do not rest on confidential information.")

In 2018, New York expressly outlawed mandatory arbitration of sexual harassment,

prohibiting both the formation of new contracts that include mandatory arbitration of sexual

harassment and declaring already existing mandatory arbitration clauses "null and void." CPLR

§ 7515. In passing this law, various New York state senators commented that "victims of sexual

harassment have been forced to remain silent for far too long" and that there "is no place in our

government, or society as a whole, for sexual assault or harassment " *See* New York State

Senate, Senate Passes Comprehensive Strengthening of New York's Sexual Harassment Laws,

(March 12, 2018), https://www.nysenate.gov/newsroom/articles/2018/senate-passes-

comprehensive-strengtheningnew-yorks-sexual-harassment-laws. The senators explained that

"bans [of] secret settlements" and "prohibit[ion] [of] mandatory arbitration for sexual harassment

complaints" further the societal goal of "giv[ing] [victims] a voice" because when an individual

faces a hostile work environment "laws and policies must be in place to empower individuals to

speak out and to hold offenders accountable for their wrongdoing." *Id*. Victims must "not only

feel safe enough to come forward, but also to ensure their voice will be heard." *Id*.

Regardless of whether the arbitration agreement was procedurally unconscionable, under

current "mores and business practices" mandatory arbitration of sexual harassment is an

outrageous intrusion on the rights of those who have suffered from the most reprehensible

misconduct, and it is therefore substantively unconscionable. This type of substantive

unconscionability is exceptional and sufficient in and of itself to render the purported agreement

unconscionable, thereby precluding its formation.

> ii.   The ADR Agreement is Procedurally Unconscionable

The purported agreement to arbitrate sexual harassment claims with Uber is also

procedurally unconscionable because Plaintiff lacked "a meaningful choice" in deciding whether

to assent to the agreement. *See Brennan*, 198 F. Supp. 2d at 382 ("The test for procedural

inadequacy in forming a contract is whether, in light of all the facts and circumstances, a party

lacked "a meaningful choice" in deciding whether to sign the contract."); see also *Blessing v.*

*Sirius XM Radio Inc*., 756 F. Supp. 2d 445, 456 (S.D.N.Y. 2010) ("It is true that where, as here,

there is no market alternative, a contract of adhesion with no meaningful opportunity for the

aggrieved party to bargain indicates a degree of procedural unconscionability."). Here, signing

the ADR Agreement as presented was a condition of employment. Plaintiff had no opportunity to

negotiate its terms.

> C.   The Court Should Interpret the Contract

State and Federal law require the Court to hold a trial on the issue of contract formation

because, as explained above, genuine issues of material fact exist concerning whether an

agreement to arbitrate sexual harassment claims was formed. When reviewing motions to compel

arbitration brought under the Federal Arbitration Act, "[i]f the making of the arbitration

agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; see

also *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to

compel arbitration brought under the [FAA], the court applies a standard similar to that

applicable for a motion for summary judgment," namely that "[i]f there is an issue of fact as to

the making of the agreement for arbitration, then a trial is necessary."). CPLR § 7503(a) provides that the Court "shall direct the parties to arbitrate" only "[w]here there is no substantial question whether a valid agreement [to arbitrate] was made." Where, as here, there is a question as to whether the agreement to arbitrate was formed, the issue "shall be tried forthwith in said court." Id.

Similarly, under New York law, questions of unconscionability require a hearing. "The rule is that if it appears from the record before the court that unconscionability may exist, and the issue is not free from doubt, then the court must hold a hearing where the parties may present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect." *State v. Wolowitz*, 468 N.Y.S.2d 131, 146 (2d Dep't 1983) (emphasis added). Here, the evidence sufficiently raises the issue of unconscionability concerning the purported arbitration agreement. Accordingly, Plaintiff is entitled to a hearing, following discovery, on the issue of unconscionability. *See, e.g., Preferred Cap., Inc. v. Warren*, 2003 WL 22515182, at *3 (Sup. Ct. Yates Cty. Oct. 28, 2003), aff'd, 778 N.Y.S.2d 803 (4th Dep't 2003) (ordering discovery and scheduling a hearing where affidavit raised genuine issues of material fact as to procedural unconscionability).

D. It Is Within the Court's Exclusive Province to Determine Whether an Agreement to Arbitrate Was Formed.

Under longstanding precedent, courts always retain the authority to determine whether an agreement to arbitrate exists in the first place; the presence of a delegation clause is immaterial. The issue of whether an arbitration clause is valid is a different issue from whether the parties ever formed an agreement to arbitrate. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010); *see also Buckeye Check Cashing, Inc*. v. Cardegna, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and oblige was ever concluded."). Indeed, the Supreme Court explained that the validity of an arbitration clause, which is governed by § 2 of the FAA, addresses "whether it is legally binding, as opposed to whether it was in fact agreed to." *Rent-A-Center*, 561 U.S. at 69 n.1; *see also Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018) ("Pursuant to established Supreme Court precedent, however, there's an important distinction between arguments challenging the validity of an agreement and those challenging an agreement's formation." (citations omitted)); *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.,* 853 F.3d 804, 810 (5th Cir. 2017) ("'The Court made clear in *Buckeye Check Cashing* and *Rent-A-Center* that when it explained that '[t]here are two types of validity challenges under § 2,' it was not addressing a contention that no agreement was ever concluded by the parties.'" (citations omitted)). Therefore, an arbitration clause's validity under § 2 goes to whether the clause may be enforced.

Where, as here, a party disputes whether it agreed to the arbitration clause in the first place, it is exclusively within the court's province to determine if an agreement to arbitrate was formed. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts [ ] apply ordinary state-law principles that govern the formation of

12

contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). This flows from the basic principle that arbitration is a matter of contract law, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) (*citing Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374 (1974)). As with any contract dispute, courts have the authority to evaluate whether an agreement to arbitrate was formed. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). Therefore, a court may order arbitration only when "it is satisfied that the parties agreed to arbitrate." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

Even where, as here, Uber relies upon a purported delegation clause, a court retains the exclusive authority to determine whether an agreement to arbitrate was formed in the first place. In *Granite Rock Co.*, the Court explained first that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." 561 U.S. at 297. To do so, "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id*. The Court went on to explain that "[w]here there is no provision validly committing them to an arbitrator, these issues typically concern the scope of the arbitration clause and its enforceability." *Id*. The Court continued, stating that "[i]n addition, these issues always include

whether the clause was agreed to, and may include when that agreement was formed." *Id*. (emphasis added).

This language makes clear that even if a delegation provision exists, it is always within the court's province to determine whether an agreement was formed in the first place. The Court further buttressed this principle, stating that our precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, "the court" must resolve the disagreement. *Id*. at 299–300. Again, the Court clarified that whether the parties formed an agreement to arbitrate is separate from issues related to a delegation provision. Therefore, whether a party formed an agreement to arbitrate, including whether it agreed to arbitrate arbitrability, is a question for the court to resolve.

Any appeal to the scope of the delegation clause is irrelevant when the parties disagree over whether the arbitration agreement was formed in the first place. Otherwise, a court is placed in the untenable position of using the substance of an unformed agreement to show that the agreement was formed. This argument is circular, nonsensical, and puts the proverbial cart before the horse.

E.  The Arbitration Agreement is Not Mutual Between Plaintiff and the Defendants

Plaintiff is not party to any agreement with the individual defendants Arun Nagarajan and Travis Kalanick ("Individual Defendants") to resolve their disputes by arbitration. Thus, the Individual Defendants have no basis upon which to move to compel Plaintiff to arbitrate her claims against them. *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir. 1995) ("[a] nonsignatory may compel arbitration against a party to an arbitration agreement

when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause.")

Defendants argue that disputes with Defendants Kalanick and Nagarajan are covered by the ADR Agreement because they were acting as employees or agents of Uber. (Defendants' Memorandum of Law in Support of Motion to Compel p. 16) This argument must fail because neither Defendant Nagarajan nor Defendant Kalanick were acting within the scope of their employment or agency when they sexually harassed and otherwise discriminated against Plaintiff. Indeed, Defendant Kalanick was no longer an employee of Uber when he stroked the unicorn horn on Plaintiff's head in a sexual manner.

Moreover, Uber may yet contest vicarious liability for Defendants Kalanick and Nagarajan's more outrageous acts: no reasonable juror will conclude that masturbatory gestures or throwing hard plastic balls at someone come within the scope of their employment. Nor, for that matter, will a reasonable juror conclude that being assaulted with a plastic ball or having her unicorn horn stroked in a sexual manner is within the scope of Plaintiff's employment. *See Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 743-44 (1998) ("[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment.... [However], the general rule is that sexual harassment by a supervisor is not conduct within the scope of employment.")

If Uber can eschew vicarious liability for the acts giving rise to Plaintiff's claims, it is reasonable to conclude that these acts do not "aris[e] out of or relat[e] to … [Plaintiff's] employment relationship" with Uber. (Abrol Decl. Ex. 1, p. 21.)

15

III.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that Defendants' Motion to

Compel Arbitration be denied.

Dated: New York, New York
       October 30, 2023

GODDARD LAW PLLC
*Attorneys for Plaintiff*

By:   <u>/s/ Megan S. Goddard</u>

Megan S. Goddard
Frances Codd Slusarz
39 Broadway, Suite 1540
New York, New York 10006
(646) 964-1178
Megan@goddardlawnyc.com
frances@goddardlawnyc.com